Case number 15-7126, David DeJesus Appellant v. WP Company, LLC, doing business as Washington Post Mr. Morgan Ross for the appellant, Ms. Holmes for the appellate Did you want me to file that supplemental inquiry? No, we would have told you. Thank you Thank you Court, please. Mayor Morgan Ross, appearing on behalf of the appellant I'd like to reserve three minutes for rebuttal, if I may Mr. Morgan Ross, if you could pull the event down a little bit, thank you Where have I heard that before? Thank you This is a particular matter regarding an Afro-American client and a particular person who was employed by the Washington Post for 18 years He came in on a particular six-month usual-type visit to his boss and when he came in, he was handed a resignation package and told he was either going to resign or he was going to be fired without any warning, without any investigation, without anything except that particular statement and then escorted out of the building and told in 21 days he had to either give his resignation or he's through In any event, he was a person who was there for 18 years, brought in a billion dollars worth of business but what happened in 2008 towards the end was Catherine Weymouth became the publisher and all of a sudden, shall we say the purposes sort of changed where now Afro-American employees as well as employees over 40 were given the gate, so to speak The reason given for Mr. DeJesus' termination were number one, ordering a purportedly unauthorized RAM study for an important client, Allstate Insurance Company It didn't have to be authorized There was all the evidence in the arbitration and elsewhere in the depositions and affidavits There was no such requirement that it had to be authorized And on top of it, Mr. DeJesus discussed it by emails and otherwise with his boss, so to speak, Mr. Wainwright who never said you had to be authorized and in fact only gave the instruction, show it to the client before you show it to the advertising agent which he did He gave it to the client in a meeting Of course, the client was Stacy Sharp, who was an Afro-American which didn't particularly please Ms. Wainwright anyway who once before, when that particular person was invited to a function and was supposed to sit at the same table with them Ms. Wainwright said, no, no way, she's not a good fit despite the fact she was a high official in a big company, Allstate, that brought business to the company She wasn't a good fit And by the way, that was what was put on to the particular reason to fire Mr. DeJesus He wasn't a good fit any longer, of course he wasn't He was 59 years old, an African-American Which went on further The second reason was, was delivering the favorable results to Allstate Stacy Sharp, a high-level African-American executive instead of Karen Hornberger who was a high-level white Allstate executive That was quite strange because Stacy Sharp was the particular person that he always dealt with, and who was his high-level I think you need to focus on what we can do We've said numerous times that we're not a super-personnel board where we can't really judge the merits of whether these reasons necessarily make sense If the reasons for the termination are reasons that are legitimate reasons whether we would agree with them or not if we were running the company doesn't really matter It's whether, if they are legitimate reasons, did they honestly believe them That's the first question And I think you need to spend your time focusing on that It sort of was, Your Honor, I was showing why they were not legitimate reasons Because, specifically, even the second item about Karen Hornberger He'd only met her once in 18 years for a couple of minutes That was an excuse And by the way, there is e-mails back and forth But I think the question is, and I thought this was what Judge Wilkins was getting at is that whether they're legitimate or illegitimate is different from whether the representatives of the Post believe that they were legitimate I understood that, Your Honor And that's why I was addressing the fact that how could they believe it when all of the documentation, all of the e-mails said the opposite The e-mails said, show it to the client Did not say Karen Hornberger at any time That's what I was getting at So how could you say that you're fired for not showing it to Karen Hornberger instead of Stacey Sharp When Karen Hornberger was never once mentioned in any of the communications back and forth Only show it to the client Not to Karen Hornberger That's what I'm getting at And it was the same thing when it came to authorization There was an e-mail back to our client, to Mr. DeJesus Not saying you weren't authorized at any time before he did it or after he did it Only instructing him to give it to the client before the advertising agency All the evidence shows that those particular statements for his firing were false And they knew they were false Because in the arbitration there was testimony given by Ms. Wainwright Which was found unpersuasive and not believable And the arbitration found that the termination of DeJesus was without justice sufficient cause Entirely unfounded Entirely Uninvestigated Which is another thing It was due process No investigation, just walks in And the reason why, you can assume the reason why they did it that way Is because they didn't want any documentation by him that would show up again Showing that this was all baloney And then it was in violation of the post-disciplinary policies And there was no due process, a lack of due process That's what the arbitrator found And by the way, the arbitrator was picked by both sides Was independent, who had experience for years in the labor world On top of it, the arbitration was done with rules of evidence And the particular witnesses, and they had witnesses, it wasn't just argument They were examined, cross-examined, and it was like a full trial They cited the Grimes case, the Grimes case, the particular arbitrator was picked by one side That's not the case here Can I ask you about a slightly different issue? There's some discussion in the record here about other people who were terminated Other people who were fired during this period And it appears that there was some attempt to gain discovery about those other terminations You got some information, but not all of it And one of the things that the district court judge says here Is that's not very helpful because they had to be in the same situation as he was So, one question that occurs to me is why Mr. DeJesus did not pursue that discovery? He did. We got discovery, and in discovery from 2009 to 2011 There were 56 employees with buyouts like he was Of those, 47 were African American, one Hispanic, and 48 of those were over 40 Almost all of them fit in to the protected class What happened was we wanted more Well, that's what I'm asking you In other words, what I thought the district court said here was They are not similarly situated Well, that's what the district court said But what we were asking for was to show that they were similarly situated That they were African American and were over 40 The district court didn't give us going back to 2008 But the ones we had in 2009, 2010, leading up right to 2011 As I said, 55 we got, and 47 were African American of them One Hispanic, and 48 of them were over 40 years old Almost all of them fit into a protected class How do you do that? One department, they got rid of almost everybody completely They were all African American, just got rid of them And there's evidence all over the place Of how they discriminated against African Americans in the over 40s The point is, your question, I really liked to a large extent And yours too, because the lower court became the jury What the lower court did was decide the issues of fact, as they thought However, the problem was, is they didn't give, or the court did not give To the plaintiffs, so to speak, a prima facie case, which was established There was all kinds of discrimination shown He was shown not to be a good fit That's what they showed for Stacey Sharp That's a remark, she was African American She couldn't sit at the table, she's not a good fit Why? They did the same thing with a whole group of African Americans And put them right in the center In one close portion, all African Americans What happened? A separate, equal all of a sudden? We're back to segregation? Then they got a picture in the wall, and a bunch of pictures And all the pictures show mayors, and presidents, and whatever All with prestige One picture of an African American, buried Showing him putting in drugs into his arm What do you do? There's a particular person that comes in with a Ku Klux Klan everyday belt Nobody says a word about that They don't stop them from having it What kind of a situation is that? Where they condone that kind of behavior And actually perform it themselves The fact of the matter is There was evidence of affidavits Testimony With cross-examination Depositions That all supported The particular allegations of the plaintiff And there was nothing that supported the defendant Except Wainwright saying, that's what I thought But then she continually, and repeatedly Every time she testified, changed her testimony Every time she gave an affidavit And then later on said, well, I forgot It was a long time ago, and that's what the counsel said Except one problem She testified the first time, shortly afterwards In the arbitration How could she have forgotten? And then she testified again In the particular proceedings But on top of it She helped them put together the interrogatory answers Telling me she took a deposition And she helped them put together the sworn interrogatory answers Without being, shall we say Shown her past experiences But on top of it She testified the first time, shortly after In the arbitration itself And every time she had a different story Okay, thank you Thank you so much Good morning, your honors May it please the court Jacqueline Holmes for the Apple Leaf, Washington Post I'd like to start, Judge Wilkins With a response to your question Regarding whether or not there was an honest belief On behalf of Ms. Wainwright Ms. Wainwright testified over and over and over In this case That in her mind and in her view Client means the person with advertising budget Decision-making authority Let me just give you one example And this is in her deposition at 183 Which is in the Joint Appendix at 531 The client, by our definition Are those that have budgets and can make decisions That's the definition for us And that's over and over again in the record You'll find it at 519, 522 of the Joint Appendix Let me interrupt you And tell you the two problems that I have In this case Okay From your perspective It seems that there are the two principal reasons Given for the termination of Mr. Davis Who's here Is that first, he ordered a RAM study Without seeking proper authorization Correct When that came up in email traffic Ms. Wainwright responded, no words In the end she did, that's correct There was some traffic prior to that And I think this was misstated a bit She said that before this letter of termination came out That's correct Okay The second reason is You informed me that you did not meet with the client When you delivered the study But instead only met with their agency And with the local client contact With no advertising decision-making ability Or budgetary oversight Correct So that's in the termination letter Correct In the arbitration she testified That he was fired because he hadn't met with anybody To discuss the study Which contradicts the termination letter So if we take the evidence in the light most favorable To the plaintiff, which is what we're supposed to do Correct Don't we have evidence from which a jury can find That these two statements Ms. Wainwright has changed her story on Or testified on Or at least the first statement was false Because she went from no worries To it being the grounds for termination So I think the answer is no And let me explain why, Your Honor With regard to the Rand study The first thing she said to him is I should have been aware of this Before we moved forward And she's testified consistently That in her department She did require approval And he doesn't undermine that He says she didn't But he had never done it before So again there's nothing Undermining her honest belief in that regard Yes, at the end of the exchange She said no worries Because as she explained in her deposition And elsewhere We were where we were And what I wanted to do was make the best of it And move this forward By trying to go to the client Meaning in her words The person with decision-making authority And try to use this information To get more of the advertising dollars From Allstate Which in her mind Was the whole purpose of the exercise The whole purpose of the job Is to move dollars from one place to another With regard to the sharp inconsistency I agree there was an inconsistency She did not remember At the time of the arbitration That he had given it to sharp But in her mind It was irrelevant In the sense that He was supposed to go to the client Which for her Is the person with the purse Those are all good arguments But aren't they arguments for a jury? I don't think so, your honor I don't think it undermines her honest belief There's nothing undermining her honest belief In this record There's nothing undermining the notion That she didn't genuinely believe That the client meant The person with the purse I think the district court got that right And the arbitration award doesn't undermine that The jury couldn't reasonably believe That if she says no worries In an email But then later says This is grounds for termination That perhaps the grounds for termination Isn't really as credible Or is it the real reason? I think that it's the two things together I don't think that the RAM study alone Would have gotten him dismissed I think what happened Is that Wainwright reached a breaking point When he then didn't follow her instructions And it's pretty clear That he didn't follow her instructions And I think there's also Just to be clear Some evidence in the record That shows that he knew He wasn't following her instructions The sharp meeting was set on May 24th He's set in stone It's going to be on June 6th He knows that on May 24th On May 27th she emails him And says Mr. DeJesus I want you to make sure You get a meeting with the client Please give me a status update Now if what he says In this litigation is true That the meeting with Sharp Complied with those instructions And that's what he says He would expect the response To that email to be I've got a meeting on June 6th With Ms. Sharp And I'm going to provide That information to her It's not what he says He says I'm mailing down dates What does that mean? He's mailing down dates With the agency So he never comes to her and says I'm meeting with Sharp If he'd come to her and said I'm meeting with Sharp And she said fine And then later changed course I mean I would completely agree with you That's not what he did And then she asks him again On June 1st What's the status of the meeting With the client Not the agency The client And he responds The meeting with June 8th That's the agency He never discloses The meeting with Sharp And so I think That there's that piece of this as well There's nothing undermining Her honest belief That the client Was the person with the purse And there's no dispute That he didn't meet with the person With the purse There's no dispute about that at all There's also I think You also need to be able to infer I think That race or age May have motivated The dismissal And here there's no evidence of that And in fact there's substantial evidence That undermines that His principal complaints About Wainwright Relate to Relate to yelling  That type of thing All things that he admits Younger and Caucasian employees Also experienced Working for Wainwright Which gives Which I think substantially Undermines any notion That any of this was race or age based He also was in the same Race and age protected categories The entire time he worked for Wainwright And indeed the entire time He worked for the Washington Post So before we get too far into that So at least in some situations The implausibility If the stated justification is implausible The implausibility The stated justification Itself can be taken as evidence Of an illicit motive It can be evidence I'm not sure alone it's enough I think what the court has said Are things like Well it can be It certainly can be In certain situations You don't always have to have more I think our cases have said And logic would suggest That if the company Is towing one line In terms of the justification It turns out that completely blows up And then what's left on the table Is an illicit motivation Then the fact that you've blown up The stated justification Itself could be enough I'm not saying that happened here I'm just saying as a matter of Conceptually No I understand I think with respect I think that what those cases say At least to my recollection Is that plus For example evidence Of a prima facie case Which was never analyzed here Because Brady Right we don't analyze The prima facie case But I do think There has to be some indication That race or age May have motivated That is the ultimate question And I do think here There's substantial evidence Indeed undercutting that There's certainly no evidence Of a grand discriminatory plan For example To get to your question Judge Brown about discovery They did get discovery On 142 people dismissed By the post in this time frame The 55 that they're talking about Is in their responses To interrogatories They listed 55 people With knowledge All of whom took buyouts And thus are not Similarly situated to the plaintiff As Aliotta clearly holds If you look at the 142 You really can't draw Any inferences of discrimination So before we go Let's just assume For purposes of argument That I'm right about this Okay Now if I am And we're back on the question Of whether the stated justification Was blown up On the piece of it That you view to be most pivotal Which is the notion That client means Person with budgetary authority If she testifies Look I always thought Client meant person With budgetary authority There's nothing in any Of the evidence that suggests That calls into doubt Whether I actually thought that Correct I mean that might be true Because I don't know What you're supposed to do All you can do is ask And the person says That's what I always thought Well you could find emails Of her referring to people Without that authority The client I mean they got emails Back to 2008 There are other ways To prove that up right Yeah so what is your best So if that's where we are The post Through her testimony Says look When I said client I meant someone With budgetary authority And the plaintiff says Well no you never said that And that's true too That was never clearly communicated That client meant somebody With budgetary authority So then we're basically At a stalemate So the question becomes What is a plaintiff In that situation Supposed to do To stave off some re-judgment If what they need to show If what they need to send To the jury Is what was in the person's mind Well no I think It's just like every other Denial of I mean that's essentially A denial of misconduct Right You didn't tell me You weren't clear enough And I didn't do anything wrong And we know That's not enough Under the cases So what's the plaintiff Supposed to do He's supposed to do something To undermine that explanation What might he do He might find Email communications Or other communications Of her You know Communicating that The client is sharp For example In this case What the plaintiff might have done Is told her he was meeting with Sharp Which he had multiple Opportunities to do And then have her say Yes or no And if she says yes And then she comes back And says Sharp wasn't good enough He's got a good case Did he put it in Salesforce He did put it in Salesforce Your Honor Did he put it in Salesforce Contemporaneously I believe he did Did she look in Salesforce She did not look in Salesforce For that purpose Again this is un- And isn't that evidence It is not For two reasons One Because Salesforce She testified without contradiction That she didn't look in Salesforce For that purpose She pulled reports out of Salesforce How many sales calls Are her reps making That kind of thing  Without any contradiction She testified I did not go in there To look at individual emails But more importantly here Why would she look in Salesforce She asked him the question And he answered the question In emails I have my meetings on June 8th She's supposed to assume he's lying And run around trying to scour Through Salesforce And figure out what the actual answer is That doesn't make any sense In this case He When you say she asked him the question What do you She asked him specifically in emails On May 27th and June 1st After the May 24th After the meeting with Sharp was set up Please tell me about the status Of your meeting with Allstate She asked him repeatedly And he never responded It's on June 6th with Stacy Sharp He could have done that It was already set up There's no dispute about that And so it makes no sense to say Well I didn't tell you the whole story Boss So you need to go back And hunt through Salesforce And find out what the real story is It was not unreasonable for her to think Okay it's on June 8th He's telling me it's on June 8th Right So I don't think the Salesforce Gets in anywhere in this case For those reasons Well one thing that I find Kind of unusual about this case Is the arbitration Yes Okay And what's interesting about that Is that that arbitration Deals with the collective bargaining agreement That's correct Which presumably She was his supervisor And she was aware Of what was required Under that collective bargaining agreement Right To a degree She got advice So if she believed That this was insubordination And neglect of duty Presumably she knew What it would take To demonstrate that And I think You know There's no dispute That the arbitrator Finds that that was not done Right That they didn't investigate it That it wasn't clearly Conveyed to him In order to have insubordination He has to be willfully Not doing what he's told to do For gross misconduct Yeah Presumably they found that He was not willfully doing that Because it wasn't clearly Told to him And that's why we lost the arbitration For sure Right So Why doesn't that impact On whether or not This was protectual When we get to the Civil case Because Look We lost the arbitration Because the burden was on the post To prove gross misconduct Which means we had to prove A clear order And we had to prove That we did not Notice the consequences And the arbitrator held We didn't prove that And again That's why we lost But I don't think I mean For one thing As to Wainwright's knowledge She was getting advice From others She was not an expert In the collective bargaining agreement And didn't purport to be The post has other people For that But So None of that undermines Though whether she honestly Believed That she had Told him To give it to the client And what she What she meant by the client Whether The clarity of the order I think the district court Got this exactly right The clarity of the order Is not what's at issue anymore The burden is on him To prove that she Is engaged in pretext That she's not telling the truth About the reasons About her reasons And there's nothing In the arbitration That undermines that The arbitrator Certainly found She didn't give a clear order But let's assume that's true That doesn't mean She didn't honestly believe That by referring to the client Which again In her parlance Is Client Is person With Advertising Budgetary Benefits Or Budgetary Decision making authority Because that's what the job is And she says that over and over The job is To get people To move money From the Wall Street Journal To the Washington Post And when the burden Is on him To prove That it is That our reasons Are untrue That's quite a different burden Than we had In the arbitration When again The burden was on us To prove a clear order And we didn't do it And that's why He was reinstated That's why He has his backpack And we acknowledge that I know my time Is expired So if there are Any other questions I'd be happy to Thank you All right Thank you Mr. Margenroth You can have Two minutes for rebuttal Thank you First of all In the testimony Of Ms. Wainwright  That Sharp Had Significant Budgetary Influence And impact Upon media Decisions She admitted to that She also admitted That she Had Significant Budgetary Influence   Decisions She also admitted That she was Highly influential Member Of Allstate's Marketing team And also That she reported Directly to the Chairman Of Allstate She testified To that Also It is stated Everywhere That the company All the way up To the president Of the post That if it's not In the sales force It never happened That's a quote Managers Like Wainwright Were required To track all Sales persons Activity Continuously On The sales force She admitted To that And her deposition Is Wainwright Also Excuse me But isn't it A little bit Anomalous That when she Asked this direct Question About The meeting He doesn't Just respond Yes I've set up The meeting Your honor He responded Several times to it And told her About the meeting She knew about The meeting And when the June 6th Meeting took place This was all in Sales force too He let her know Immediately It had taken place Then he had a June 8th meeting Afterwards With a sales person From the particular Agency Which he was Told by her To have second On June The 20th When he met With his Wainwright They discussed All that Yet on June 27th He gets Terminated By the way I did want to Also respond About the district Court Who wouldn't Allow us The demographic Of all the Employees buyouts Similarly situated The judge said Because only Terminations were Relevant That's why we Didn't get that Evidence And he wasn't Terminated He withdrew Rather than be Terminated That's what the Judge said We couldn't get That evidence And then dismiss The case because We didn't have That evidence So why didn't You appeal The discovery Well that would Have been Shall we say An appeal during The course of the Proceedings Well but I mean Raise it At least with The district court Object to that Decision Well we objected At the time Reconsideration Reconsideration But it didn't do Any good Nothing did Any good And also She testified Herself Ms. Wainwright That The sole rule Was a study That measured Consumers That's all She testified There And There was No approval That she could Show that was Actually required All right I guess that Pretty much takes My time All right Thank you very Much Your Honor
judges: Brown, Srinivasan, Wilkins